Eugene Joseph **WHITE**,
Plaintiff–Appellant,
Cross–Appellee,

v.

**ANCHOR MOTOR FREIGHT, INC.** and **Local 580, International Brotherhood of Teamsters,** Defendants–Appellees, Cross–Appellants.

Nos. 88–1725, 88–1960.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 29, 1989.

Decided Nov. 14, 1989.

See also, D.C., 683 F.Supp. 1177.

Barbara Harvey (argued), Detroit, Mich., for Eugene Joseph White, plaintiff-appellant.

David R. Knowles, Cleveland, Ohio, and Timothy Sawyer Knowlton (argued), Honigman, Miller, Schwartz & Cohn, Lansing, Mich., for Anchor Motor Freight, Inc., defendant-appellee.

Gerry Miller (argued), Previant, Goldberg, Uelmen, Grantz, Miller & Brueggeman, Milwaukee, Wis., for Teamsters, Local 580, defendant-appellee.

Before KRUPANSKY and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

KRUPANSKY, Circuit Judge:

Appellant Eugene White (White) appealed the decision of the District Court for the Eastern District of Michigan granting appellees Anchor Motor Freight (Anchor) and Local 580 of the International Brotherhood of Teamsters (Local 580) a directed verdict in appellant's "hybrid" action initiated pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

White had been employed as a driver for Anchor for approximately nine years transporting motor vehicles by truck when he was discharged on September 10, 1985 after an accident at Port Newark, New Jersey on August 21, 1985. The circumstances of the accident are not in dispute. Appellant was loading new vehicles onto his tractor trailer for transport at Port Newark when he was instructed to move his rig to another location and wait for clearance to proceed loading. Appellant failed to retract a ramp that he had extended for on-loading his cargo before moving his unit. Hidden from appellant's view as he moved his rig, the extended ramp collided with a new BMW automobile that was on the trailer of another carrier.

Appellant immediately reported the accident to his superiors at Anchor's Lansing, Michigan terminal. Upon his return to Lansing on August 24, 1985, appellant was suspended pending full investigation of the circumstances of the accident. On September 10, following investigation and a preliminary assessment that the accident had resulted in approximately $5,000 of damage to the BMW, appellant was discharged from his position with Anchor.

White filed a grievance challenging his discharge with his Local 580 steward, Don Beecham. The grievance resulted in the convening of a "local hearing" on September 27, at which appellant was represented by Local 580 business agent Jim Cooper (Cooper). At the hearing, Cooper requested that appellant be reinstated to his former position without backpay. Management denied this request, and classified appellant's accident as "major." Under article 40, section 1(a) of the National Master Automobile Transporters Agreement (NMATA)—the collective bargaining agreement in effect between Anchor and Local 580—Anchor was permitted to discharge a driver for causing a single "major chargeable accident."

Appellant appealed the decision of the local hearing board to a regional panel comprised equally of union members and members of management (the Michigan Panel).[1] On October 28, 1985, after the conclusion of a hearing, the Michigan Panel upheld White's discharge. Thereafter he charged that Cooper's ineffective and perfunctory representation induced the Michigan Panel to uphold his discharge.

On April 7, 1986, White commenced the instant "hybrid 301" action in district court, alleging that his discharge was in violation of the collective bargaining agreement and that Local 580 had breached its duty of fair representation by failing to diligently represent him before the Michigan Panel. Specifically, he alleged that his discharge was in violation of article 40, section 1(a) of the NMATA, *i.e.*, that his accident was not "major" and, therefore, should not have resulted in his discharge. Further, appellant alleged that Local 580's

---

1. Under NMATA, grievances appealed from the local level are heard by joint panels. The panels are used in lieu of single arbitrators.

perfunctory representation undermined his effort to be reinstated. In his complaint, White invoked the jurisdiction of the district court pursuant to both section 301 of the LMRA and 28 U.S.C. § 1337.[2]

On June 14, 1988, after appellant had presented his case over the course of seven days, the district court granted Anchor's and Local 580's motion for a directed verdict. The court concluded that appellant had not presented any evidence in support of a finding that the incident at Port Newark was not in fact a "major" accident and that, therefore, his discharge had not constituted a breach of the NMATA. Appellant's breach of collective bargaining agreement charge against Anchor having failed, the district court directed a verdict against appellant on his breach of duty of fair representation claim against Local 580. Appellant timely perfected this appeal of the district court's order.

■ In dismissing White's cause of action against Anchor for breach of the NMATA, the district court properly concluded that no evidence had been adduced in support of appellant's contention that his accident was not properly classified as "major." The NMATA unequivocally permitted the discharge of a union driver for committing a single major chargeable accident. *See Whitten v. Anchor Motor Freight*, 521 F.2d 1335, 1339 (6th Cir.1975). The court concluded that Anchor had not breached the NMATA by discharging appellant for his "major" accident at Port Newark. Accordingly, this court affirms the district's court's order granting Anchor and Local 580 a directed verdict on this issue.

Unable to prove that his accident was not classifiable as a "major" accident, appellant has asserted that the Michigan Panel has traditionally ordered the reinstatement of drivers who had committed infractions of similar magnitude, and that he, too, would have been reinstated had Local 580 properly presented his case to the Michigan Panel. In this vein, appellant has argued that both Local 580 and Anchor discriminated against him for his support of a dissident union organization known as Teamsters for a Democratic Union (TDU), and, more specifically, for having filed complaints against both Local 580 and Anchor with the NLRB earlier in 1985.[3] Appellant alleged further that anti-TDU animus caused Anchor to discharge him in the first instance, and was responsible for Cooper's ineffective representation before the Michigan Panel.

■ Before the district court, appellant did not argue that his discharge was discriminatory in violation of NMATA article 14 of the collective bargaining agreement. The argument was not referenced in appellant's complaint, subsequent pleadings, or in the presentation of appellant's evidence during trial. Both Anchor and Local 580 object to the appellant's efforts to join the issue of unlawful and discriminatory discharge in violation of NMATA article 14 for the first time on this appeal.

White has urged that, although he concededly had failed to reference article 14 in his complaint, it should nevertheless be liberally construed to incorporate by inference a cause of action for discriminatory discharge. In advancing this argument, however, appellant has ignored the import of his complaint, which was framed exclusively in terms of NMATA article 40. Appellant's case below, as evidenced by the issues joined in the complaint and by the record of evidence viewed in its entirety, was anchored exclusively in an argument that, pursuant to article 40, his accident was not of the magnitude that would have ordinarily resulted in a driver's discharge.

---

**2.** 28 U.S.C. § 1337 provides that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

**3.** In the spring of 1985, appellant complained to the NLRB that Anchor and Local 580 had torn down notices of TDU meetings posted at the Lansing facility and had, therefore, engaged in an unfair labor practice. The NLRB issued a complaint in response to appellant's grievance and enjoined Anchor and Local 580 from commencing further action adverse to TDU activities.

This court will not decide issues or claims not litigated before the district court. *Boddie v. American Broadcasting Cos., Inc.,* 881 F.2d 267, 268 n. 1 (6th Cir.1989); *Yeiter v. Sec. Health and Human Svcs.,* 818 F.2d 8, 11 (6th Cir.), *cert. denied,* 484 U.S. 854, 108 S.Ct. 160, 98 L.Ed.2d 115 (1987). Moreover, appellant's request that his complaint be interpreted so as to infer a discrimination claim under article 14 of the NMATA is offensive to the requirement that on appeal "we review the case presented to the district court rather than a better case fashioned after the district court's order." *Adams v. James,* 784 F.2d 1077, 1080 (11th Cir.1986). Appellant cannot attempt at this juncture to materially alter his cause of action by advancing for the first time a charge that his discharge was in violation of the anti-discrimination clause of article 14 of the NMATA.

Appellant has also charged that the trial court erred in directing a verdict against appellant on his claim that Local 580 had breached its duty of fair representation. In support of this argument, appellant has cited to precedent of the sixth and other circuits wherein jurisdiction over breach of duty of fair representation claims was upheld under 28 U.S.C. § 1337 as a cause of action cognizable separate and distinct from hybrid 301 claims. *Storey v. Local 327, Intern. Broth. of Teamsters,* 759 F.2d 517, 523 (6th Cir.1985) ("The Supreme Court and various lower courts have recognized a cause of action for breach of a union's duty of fair representation which does not depend on [LMRA] section 301 as a jurisdictional base."); *Anderson v. United Paperworkers Intern. Union,* 641 F.2d 574, 576 (8th Cir.1981); *In re Carter,* 618 F.2d 1093, 1104 (5th Cir.1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981).

■ Appellant's argument in this respect is advanced in the face of the rule that the two constituent claims in every hybrid 301 action—breach of collective bargaining agreement and breach of a union's duty of fair representation—are interdependent; if the first claim that an employer has breached the collective bargaining agreement fails, then the breach of duty of fair representation claim against the union must necessarily fail with it. As this court held in *Bagsby v. Lewis Bros. Inc. of Tennessee,* 820 F.2d 799 (6th Cir.1987):

> In this hybrid suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to recover against *either* the Company or the Union, [plaintiff] must show that the Company breached the Agreement *and* that the Union breached its duty of fair representation. *Hines v. Anchor Motor Freight,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). Unless [plaintiff] demonstrates *both* violations, he can not succeed against either party.

*Id.* at 801 (emphasis in original); *accord Breininger v. Sheet Metal Workers Int'l Assoc., Local Union No. 6,* 849 F.2d 997, 999 (6th Cir.1988) (per curiam), *cert. granted,* — U.S. ——, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989); *Adkins v. Intern. Union of Elec., Radio & Machin.,* 769 F.2d 330, 336 (6th Cir.1985).

■ Thus, the validity of any hybrid 301 claim is anchored as equally in a finding that the union has breached its duty of fair representation as it is in a finding that the collective bargaining agreement has been breached and that an arbitrator or its equivalent erroneously failed to rule in favor of the grievant employee. Precedent within this circuit teaches that a federal court's jurisdiction to review an arbitrator's decision is predicated on an allegation that the arbitrator reached an erroneous decision.[4] "A court may not review the merits

---

**4.** For the purposes of the instant appeal, the Michigan Panel is analogous to the more conventional model of the single, neutral arbitrator. Decisions of the Michigan Panel are accorded final, binding effect unless the panel—comprised of an even number of members—deadlocks. In that event, the grievance is heard by a National Grievance Committee. Moreover, this court has recognized that the decisions of joint management-labor panels are entitled to the same degree of deference accorded to the decisions of single arbitrators. *Teamsters Freight Emp. v. Bowling Green Express, Inc.,* 707 F.2d 254, 256 (6th Cir.1983).

of an arbitration decision, even when the basis for the decision is ambiguous, as long as the award draws its essence from the bargaining agreement." *Wood v. Intern. Broth. of Teamsters*, 807 F.2d 493, 500 (6th Cir.1986). Absent a finding that an erroneous arbitral decision has been reached, the inquiry into the union's failure to comply with its duty of fair representation becomes immaterial, and is not justiciable.

█ Thus, the ultimate issue with respect to the claim against the union in any hybrid 301 case is whether the alleged breach of the duty of fair representation "contributed to the arbitrator's making an *erroneous* decision." *Id.* (emphasis added); *accord Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1355 (6th Cir.1989). In the instant appeal, appellant's accident was properly classified as major; the Michigan Panel, therefore, did not reach an erroneous decision in voting to uphold appellant's discharge under article 40 of the NMATA. Absent a finding that his discharge was in violation of the NMATA, appellant cannot be heard to complain that Local 580 breached its duty of fair representation.[5]

In none of the cases in which this and other courts have asserted jurisdiction under 28 U.S.C. § 1337 over separate causes of action alleging breach of a union's duty of fair representation has there been a colorable allegation that a collective bargaining agreement had been breached. Rather, in all of those cases, the only relationship genuinely at issue was that which existed between a union member and his union.[6] *See, e.g., Storey v. Local 327, Intern. Brotherhood of Teamsters*, 759 F.2d

517, 518 (6th Cir.1985) (no collective bargaining agreement in effect at time of alleged breach of duty of fair representation); *Anderson v. United Paperworkers Intern. Union*, 641 F.2d 574, 576 (8th Cir. 1981) (separate jurisdiction under 28 U.S.C. § 1337 upheld when union member alleged no breach of collective bargaining agreement, but rather alleged that union had mispresented facts underlying negotiation of the agreement); *In re Carter*, 618 F.2d 1093, 1104 (5th Cir.1980) (no jurisdiction under section 301 because plaintiff failed to allege breach of collective bargaining agreement in complaint; jurisdiction over duty of fair representation claim, however, proper under 28 U.S.C. § 1337), *cert. denied*, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981); *Mumford v. Glover*, 503 F.2d 878, 881–83 (5th Cir.1974) (jurisdiction under section 1337 available over duty of fair representation claim "outside of the contractual context"); *Beriault v. Local 40, I.L. & W.U.*, 501 F.2d 258, 266 (9th Cir.1974) (jurisdiction over duty of fair representation claim upheld after breach of collective bargaining agreement claim had been dismissed for failure to exhaust administrative remedies); *Smith v. Local No. 25, Sheet Metal Workers Intern. Ass'n*, 500 F.2d 741, 748 (5th Cir.1974) (jurisdiction upheld under section 1337 over "bare" duty of fair representation claim not implicating the relevant collective bargaining agreement).

█ In hybrid 301 claims, by contrast, the interrelationship between a union member, his union, and his employer is implicated. This court concludes that in the instant case appellant's complaint, although alleg-

---

**5.** Appellant has argued that, although his accident may have been correctly classified as major, Local 580, through diligent and zealous representation before the Michigan Panel, could have effected appellant's reinstatement. The record disclosed that business agent Cooper requested that the Panel order appellant's reinstatement. That Local 580 even agreed to pursue appellant's case before the Panel is evidence of its compliance with its duty of fair representation. Appellant had already been discharged and his reinstatement was the only relief available at the appellate Panel level. In accordance

with the NMATA, his discharge was upheld. Any suggestion that the Michigan Panel failed to order appellant's reinstatement because Cooper's presentation on behalf of appellant was perfunctory does not detract from the legitimacy and correctness of the Panel's decision.

**6.** A union's "exclusive ... authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any...." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967).

ing jurisdiction under both section 301 of the LMRA and 28 U.S.C. § 1337, stated a quintessential hybrid 301 claim.[7] If the essential nature of appellant's complaint were overlooked, then future plaintiffs would be encouraged to adopt appellant's approach and circumvent the *Bagsby* rule simply by artfully pleading 28 U.S.C. § 1337 as a jurisdictional basis and casting their duty of fair representation claims as independent causes of action in what are, in substance, hybrid 301 claims.[8] Appellant, having failed to prove that Anchor breached the NMATA, should not be permitted to circumvent the logic of *Bagsby* and reach the jury with his claim that Local 580 breached its duty of fair representation solely by virtue of artful pleading.[9]

For the foregoing reasons, the decision of the district court directing a verdict in favor of appellees Anchor and Local 580 is **affirmed.**

---

**7.** Appellant prefaced his complaint with the following language:

This is a complaint of breach of a collective bargaining agreement arising from plaintiff's discharge from the employment of the defendant employer without just cause, and of the duty of fair representation by plaintiff's union in processing his grievance.

This is a succinct and unequivocal expression of a classic hybrid 301 cause of action.

**8.** The Supreme Court has granted certiorari in *Breininger,* 849 F.2d 997 (6th Cir.1988), and may decide whether duty of fair representation claims have independent vitality beyond the context of hybrid 301 cases. Because in the instant case appellant initiated only a classical

hybrid 301 claim, the ultimate disposition of the *Breininger* controversy will in all probability have no bearing on this disposition. Moreover, it is not clear if the Supreme Court's treatment of the case will be limited to its specific facts involving union job referrals. At this juncture, at any rate, the fate of *Breininger* is far from clear.

**9.** Because Anchor clearly did not breach the NMATA and appellant had no legal right to retain his job with the company, it would, in any event, be difficult for a jury to place a dollar value on appellant's injury arising out of the alleged breach of duty of fair representation. This observation further underscores the logic of the *Bagsby* rule.