Eugene Joseph **WHITE,**
Plaintiff–Appellant,
Cross–Appellee,

v.

**ANCHOR MOTOR FREIGHT, INC.** and **Local 580, International Brotherhood of Teamsters, Defendants–Appellees, Cross–Appellants.**

Nos. 88–1725, 88–1960.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 29, 1989.

Decided April 4, 1990.

Rehearing and Rehearing En Banc Denied
May 31, 1990.

Barbara Harvey (argued), Detroit, Mich., for Eugene Joseph White.

David R. Knowles, Cleveland, Ohio, Timothy Sawyer Knowlton (argued), Honigman, Miller, Schwartz & Cohn, Lansing, Mich., for Anchor Motor Freight, Inc.

Gerry M. Miller (argued), Previant, Goldberg, Velman, Gratz, Miller & Brueggeman, Milwaukee, Wis., for Teamsters, Local 580.

Before KRUPANSKY and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Appellant Eugene White (White) appealed the decision of the District Court for the Eastern District of Michigan granting appellees Anchor Motor Freight (Anchor) and Local 580 of the International Brotherhood of Teamsters (Local 580) a directed verdict in appellant's "hybrid" action initiated pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).[1]

White had been employed as a driver for Anchor for approximately nine years transporting motor vehicles by truck when he was discharged on September 10, 1985 after an accident at Port Newark, New Jersey on August 21, 1985. The circumstances of the accident are not in dispute. Appellant was loading new vehicles onto his tractor trailer for transport at Port Newark when he was instructed to move his rig to another location and wait for clearance to proceed loading. Appellant failed to retract a ramp that he had extended for on-loading his cargo before moving his unit. Hidden from appellant's view as he moved his rig, the extended ramp collided with a new BMW automobile that was on the trailer of another carrier.

Appellant immediately reported the accident to his superiors at Anchor's Lansing, Michigan terminal. Upon his return to Lansing on August 24, 1985, appellant was suspended pending full investigation of the circumstances of the accident. On September 10, following investigation and a preliminary assessment that the accident had resulted in approximately $5,000 of damage to the BMW, appellant was discharged from his position with Anchor.

White filed a grievance challenging his discharge with his Local 580 steward, Don Beecham. The grievance resulted in the convening of a "local hearing" on September 27, at which appellant was represented by Local 580 business agent Jim Cooper (Cooper). At the hearing, Cooper requested that appellant be reinstated to his former position without backpay. Management denied this request, and classified appellant's accident as "major." Under article 40, section 1(a) of the National Master Automobile Transporters Agreement (NMATA)—the collective bargaining agreement in effect between Anchor and Local 580—Anchor was permitted to discharge a driver for causing a single "major chargeable accident."

Appellant appealed the decision of the local hearing board to a regional panel comprised equally of union members and members of management (the Michigan Panel).[2] On October 28, 1985, after the conclusion of a hearing, the Michigan Panel upheld White's discharge. Thereafter he charged that Cooper's ineffective and perfunctory representation induced the Michigan Panel to uphold his discharge.

On April 7, 1986, White commenced the instant "hybrid 301" action in district court, alleging that his discharge was in violation of the collective bargaining agreement and that Local 580 had breached its duty of fair representation by failing to diligently represent him before the Michigan Panel. Specifically, he alleged that his

---

**1.** In a decision published at 889 F.2d 718 (6th Cir.1989), this court affirmed the underlying district court judgment. The panel has determined, however, that the opinion would be of greater jurisprudential value if amended to reflect the Supreme Court's recent pronouncements in *Breininger v. Sheet Metal Workers Int'l,*

— U.S. ——, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989). The amended opinion is published here in its entirety.

**2.** Under the NMATA, grievances appealed from the local level are heard by joint panels. The panels are used in lieu of single arbitrators.

discharge was in violation of article 40, section 1(a) of the NMATA, *i.e.*, that his accident was not "major" and, therefore, should not have resulted in his discharge. Further, appellant alleged that Local 580's perfunctory representation undermined his effort to be reinstated. In his complaint, White invoked the jurisdiction of the district court pursuant to both section 301 of the LMRA and 28 U.S.C. § 1337.[3]

On June 14, 1988, after appellant had presented his case over the course of seven days, the district court granted Anchor's and Local 580's motion for a directed verdict. The court concluded that appellant had not presented any evidence in support of a finding that the incident at Port Newark was not in fact a "major" accident and that, therefore, his discharge had not constituted a breach of the NMATA. Appellant's breach of collective bargaining agreement charge against Anchor having failed, the district court directed a verdict against appellant on his breach of duty of fair representation claim against Local 580. Appellant timely perfected this appeal of the district court's order.

█ In dismissing White's cause of action against Anchor for breach of the NMATA, the district court properly concluded that no evidence had been adduced in support of appellant's contention that his accident was not properly classified as "major." The NMATA unequivocally permitted the discharge of a union driver for committing a single major chargeable accident. *See Whitten v. Anchor Motor Freight*, 521 F.2d 1335, 1339 (6th Cir.1975). The court concluded that Anchor had not breached the NMATA by discharging appellant for his "major" accident at Port Newark. Accordingly, this court affirms the district court's order granting Anchor and Local 580 a directed verdict on this issue.

Unable to prove that his accident was not classifiable as a "major" accident, appellant has asserted that the Michigan Panel has traditionally ordered the reinstatement of drivers who had committed infractions of similar magnitude, and that he, too, would have been reinstated had Local 580 properly presented his case to the Michigan Panel. In this vein, appellant has argued that both Local 580 and Anchor discriminated against him for his support of a dissident union organization known as Teamsters for a Democratic Union (TDU), and, more specifically, for having filed complaints against both Local 580 and Anchor with the NLRB earlier in 1985.[4] Appellant alleged further that anti-TDU animus caused Anchor to discharge him in the first instance, and was responsible for Cooper's ineffective representation before the Michigan Panel.

█ In his pleadings before the district court, appellant did not argue that his discharge was discriminatory in violation of NMATA article 14 of the collective bargaining agreement. The argument was referenced neither in appellant's complaint nor in his subsequent pleadings. Both Anchor and Local 580 object to the appellant's efforts to join the issue of unlawful and discriminatory discharge in violation of NMATA article 14 for the first time on this appeal.

White has urged that, although he concededly had failed to reference article 14 in his complaint, it should nevertheless be liberally construed to incorporate by inference a cause of action for discriminatory discharge. In support of this request, appellant alludes to the well established rule that technical defects in factual pleading should not exert a substantive impact on the course of a lawsuit. *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2

---

3. 28 U.S.C. § 1337 provides that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

4. In the spring of 1985, appellant complained to the NLRB that Anchor and Local 580 had torn

down notices of TDU meetings posted at the Lansing facility and had, therefore, engaged in an unfair labor practice. The NLRB issued a complaint in response to appellant's grievance and enjoined Anchor and Local 580 from commencing further action adverse to TDU activities.

L.Ed.2d 80 (1957). Indeed, it cannot be doubted that a complaint need not allege with exacting specificity every fact underlying a claim for relief in order to survive a motion for dismissal. "[A]ll the Rules [of Civil Procedure] require is 'a short and plain statement of the claim'...." *Conley*, 355 U.S. at 47, 78 S.Ct. at 103.

In advancing this argument, however, appellant has ignored the import of his complaint, which was framed exclusively in terms of NMATA article 40. Appellant's case below, as evidenced by the issues joined in the complaint, by subsequent pleadings and by the testimony elicited at trial, was anchored exclusively in an argument that, pursuant to article 40, his accident was not of the magnitude that would have resulted ordinarily in a driver's discharge. As such, White's pleadings in the instant case stated a "short and plain" claim for relief arising *exclusively* from an alleged misapplication of article 40, which addresses the discharge of drivers who have committed major accidents. Simply stated, assigning the most liberal construction to appellant's complaint, no claim beyond the charge that NMATA article 40 had been violated is reasonably discernible.

This court will not decide issues or claims not litigated before the district court. *Boddie v. American Broadcasting Cos., Inc.*, 881 F.2d 267, 268 n. 1 (6th Cir.1989); *Yeiter v. Sec. Health and Human Svcs.*, 818 F.2d 8, 11 (6th Cir.), *cert. denied*, 484 U.S. 854, 108 S.Ct. 160, 98 L.Ed.2d 115 (1987). Appellant's request that his complaint be interpreted so as to infer a discrimination claim under article 14 of the NMATA stretches the *Conley v. Gibson* rule of liberality to an unwarranted extreme and is offensive to the requirement that on appeal "we review the case presented to the district court rather than a better case fashioned after the district court's order." *Adams v. James*, 784 F.2d 1077, 1080 (11th Cir.1986). Appellant cannot attempt at the appellate level to materially alter his cause of action by advancing for the first time a charge that his discharge was in violation of the anti-discrimination clause of article 14 of the NMATA.

Appellant has also charged that the trial court erred in directing a verdict against appellant on his claim that Local 580 had breached its duty of fair representation. In support of this argument, appellant has cited to precedent of the Sixth and other circuits wherein jurisdiction over a breach of duty of fair representation claim was upheld under 28 U.S.C. § 1337 as a cause of action cognizable separate and distinct from hybrid 301 claims. *See, e.g., Storey v. Local 327, Intern. Broth. of Teamsters*, 759 F.2d 517, 523 (6th Cir.1985) ("The Supreme Court and various lower courts have recognized a cause of action for breach of a union's duty of fair representation which does not depend on [LMRA] section 301 as a jurisdictional base."); *Anderson v. United Paperworkers Intern. Union*, 641 F.2d 574, 576 (8th Cir.1981); *In re Carter*, 618 F.2d 1093, 1104 (5th Cir.1980), *cert. denied*, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981).

■ Appellant's argument in this respect is advanced in the face of the established rule that the two constituent claims in every hybrid 301 action—breach of collective bargaining agreement and breach of a union's duty of fair representation [5]—are interdependent; if the first claim anchored in the employer's alleged breach of the collective bargaining agreement fails, then the breach of duty of fair representation claim against the union must necessarily fail with it. As this court held in *Bagsby v. Lewis Bros. Inc. of Tennessee*, 820 F.2d 799 (6th Cir.1987):

> In this hybrid suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to recover against *either* the Company or the Union, [plaintiff] must show that the Company breached the Agreement *and* that the Union breached its duty of fair representation. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47

---

5. A union's "exclusive ... authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any...." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967).

L.Ed.2d 231 (1976). Unless [plaintiff] demonstrates *both* violations, he cannot succeed against either party.

*Id.* at 801 (emphasis in original); *accord Adkins v. Intern. Union of Elec., Radio & Machin.*, 769 F.2d 330, 336 (6th Cir.1985).

■ Thus, the validity of any hybrid 301 claim is anchored as equally in a finding that the union has breached its duty of fair representation as it is in a finding that the collective bargaining agreement has been breached and that an arbitrator or its equivalent erroneously failed to rule in favor of the grievant employee. Supreme Court and Sixth Circuit precedent teaches that a federal court's jurisdiction to review an arbitrator's decision is predicated on an allegation that the arbitrator reached an erroneous decision.[6] As the Supreme Court has noted, in a hybrid 301 action, "the focus is ... on whether, contrary to the arbitrator's decision, the employer breached the contract and whether there is substantial reason to believe that a union breach of duty contributed to the *erroneous* outcome of the arbitral proceedings." *Hines v. Anchor Motor Freight*, 424 U.S. 554, 568, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976) (emphasis added). "A court may not review the merits of an arbitration decision, even when the basis for the decision is ambiguous, as long as the award draws its essence from the bargaining agreement." *Wood v. Intern. Broth. of Teamsters*, 807 F.2d 493, 500 (6th Cir.1986). In the context of a hybrid 301 action, absent a finding that an erroneous arbitral decision has been reached, the inquiry into the union's failure to comply with its duty of fair representation becomes immaterial, and is not justiciable.

■ Thus, the ultimate issue with respect to the claim against the union in any hybrid 301 case is whether the alleged breach of the duty of fair representation "contributed to the arbitrator's making an *erroneous* decision." *Id.* (emphasis added); *accord Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1355 (6th Cir.1989). In the instant appeal, appellant's accident was properly classified as major; the Michigan Panel, therefore, did not reach an erroneous decision in voting to uphold appellant's discharge under article 40 of the NMATA. Absent a finding that his discharge was in violation of the NMATA, appellant cannot be heard to complain that Local 580 breached its duty of fair representation.[7]

Appellant places undue reliance on the Supreme Court's recent affirmation of the principal that "[f]ederal courts have jurisdiction to hear fair representation suits whether or not they are accompanied by claims against employers." *Breininger v. Sheet Metal Workers International*, —— U.S. ——, ——, 110 S.Ct. 424, 434, 107 L.Ed.2d 388 (1989). In none of the cases in which this and other courts have asserted jurisdiction under 28 U.S.C. § 1337 over separate causes of action alleging breach

---

6. For the purposes of the instant appeal, the Michigan Panel is analogous to the more conventional model of the single, neutral arbitrator. Decisions of the Michigan Panel are accorded final, binding effect unless the panel—comprised of an even number of members—deadlocks. In that event, the grievance is heard by a National Grievance Committee. Moreover, this court has recognized that the decisions of joint management-labor panels are entitled to the same degree of deference accorded to the decisions of single arbitrators. *Teamsters Freight Emp. v. Bowling Green Express, Inc.*, 707 F.2d 254, 256 (6th Cir.1983).

7. Appellant has argued that, although his accident may have been correctly classified as major, Local 580, through diligent and zealous representation before the Michigan Panel, could have effected appellant's reinstatement. The record disclosed that business agent Cooper requested that the Panel order appellant's reinstatement. That Local 580 even agreed to pursue appellant's case before the Panel is evidence of its compliance with its duty of fair representation. As the Supreme Court has noted, "a union may not ignore a *meritorious* grievance or process it in a perfunctory fashion." *Vaca v. Sipes*, 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967) (emphasis added). In the case at bar, appellant had already been discharged and his reinstatement was the only relief available at the appellate Panel level. In accordance with the NMATA, his discharge was upheld. Any suggestion that the Michigan Panel failed to order appellant's reinstatement because Cooper's presentation on behalf of appellant was perfunctory does not detract from the legitimacy and correctness of the Panel's decision.

of a union's duty of fair representation, however, has there been a colorable allegation that a collective bargaining agreement had been breached. Rather, in all of those cases, the principal issue joined by the controversy arose from circumstances rooted in the relationship existing between a union member and his union, rather than in the relationship existing between a union member, his union, and his employer as forged through a collective bargaining agreement. *See, e.g., Chavez v. United Food & Commercial Workers Int'l Union,* 779 F.2d 1353 (8th Cir.1985) (union allegedly induced its members to instigate a strike by falsely representing that their employment status would not be jeopardized); *Storey v. Local 327, Intern. Brotherhood of Teamsters,* 759 F.2d 517, 518 (6th Cir.1985) (no collective bargaining agreement in effect at time of alleged breach of duty of fair representation); *Anderson v. United Paperworkers Intern. Union,* 641 F.2d 574, 576 (8th Cir. 1981) (separate jurisdiction under 28 U.S.C. § 1337 upheld when union member alleged no breach of collective bargaining agreement, but rather alleged that union had mispresented facts underlying negotiation of the agreement); *In re Carter,* 618 F.2d 1093, 1104 (5th Cir.1980) (no jurisdiction under section 301 because plaintiff failed to allege breach of collective bargaining agreement in his complaint; jurisdiction over duty of fair representation claim, however, proper under 28 U.S.C. § 1337), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67

L.Ed.2d 378 (1981); *Mumford v. Glover,* 503 F.2d 878, 881–83 (5th Cir.1974) (jurisdiction under section 1337 available over duty of fair representation claim "outside of the contractual context"); *Beriault v. Local 40, I.L. & W.U.,* 501 F.2d 258, 266 (9th Cir.1974) (jurisdiction over duty of fair representation claim upheld after breach of collective bargaining agreement claim had been dismissed for failure to exhaust administrative remedies); *Smith v. Local No. 25, Sheet Metal Workers Intern. Ass'n,* 500 F.2d 741, 748 (5th Cir.1974) (jurisdiction upheld under section 1337 over "bare" duty of fair representation claim not implicating the relevant collective bargaining agreement); *Retana v. Apartment, Motel, Hotel & Elevator Operators,* 453 F.2d 1018, 1023 (9th Cir.1972) (case in which "most of the allegations of [the] complaint 'concern' matters related to the *negotiation or administration* of the collective bargaining agreements") (emphasis added); *Nedd v. United Mine Workers of America,* 400 F.2d 103 (3d Cir.1968) (claim solely against union for failing to enforce employers' obligation to fund miners' death and disability trust fund).

■ In hybrid 301 claims, by contrast, the interrelationship between a union member, his union, and his employer is implicated.[8] This court concludes that in the instant case appellant's complaint, although alleging jurisdiction under both section 301 of the LMRA and 28 U.S.C. § 1337, stated

---

**8.** It is noteworthy that in *Breininger* the Supreme Court cited its decision in *Communications Workers of America v. Beck,* 487 U.S. 735, 754–55, 108 S.Ct. 2641, 2653, 101 L.Ed.2d 634 (1988) for the proposition that duty of fair representation claims have separate vitality "[e]ven after a collective bargaining agreement has been signed...." *Breininger,* 110 S.Ct. at 433. In *Communications Workers,* however, a case in which the union members alleged only that the union had misappropriated dues that it had collected—as in the numerous lower court decisions upholding the vitality of separate duty of fair representation claims—the triangular relationship between a union member, his union, and his employer simply was not implicated.

It is also worth noting that the Court cited *Buchholtz v. Swift & Co.,* 609 F.2d 317 (8th Cir.1979), *cert. denied,* 444 U.S. 1018, 100 S.Ct.

672, 62 L.Ed.2d 648 (1980) for the proposition that section 1337 jurisdiction over separate fair representation claims has earned wide acceptance in the lower federal courts. In *Buchholtz,* the relationship between a union member, his union, and the employer *was* implicated, but the Eighth Circuit held that the duty of fair representation claim had no vitality separate from the breach of collective bargaining agreement claim. 609 F.2d at 327 ("because there was no contractual obligation on the part of [the employer] to pay the vacation pay, ... the union could not be held guilty of unfair representation"). Judges Lay and McMillian, dissenting from the court's denial of rehearing en banc, wrote that "[r]esolution of the contract claim in favor [of the employer] should not dispose of the claim against the union...." *Id.* at 331. This assertion was *not* reflective of the Eighth Circuit's holding in *Buchholtz.*

a quintessential hybrid 301 claim.[9] If the essential nature of appellant's complaint were overlooked, then future plaintiffs would be encouraged to adopt appellant's approach and circumvent the *Bagsby* rule simply by artfully pleading 28 U.S.C. § 1337 as a jurisdictional basis and casting their duty of fair representation claims as independent causes of action in what are, in substance, hybrid 301 claims.[10] Appellant, having failed to prove that Anchor breached the NMATA, should not be permitted to circumvent the logic of *Bagsby* and reach the jury with his claim that Local 580 breached its duty of fair representation solely by virtue of artful pleading.[11]

For the foregoing reasons, the decision of the district court directing a verdict in favor of appellees Anchor and Local 580 is affirmed.

9. Appellant prefaced his complaint with the following language:

> This is a complaint of breach of a collective bargaining agreement arising from plaintiff's discharge from the employment of the defendant employer without just cause, and of the duty of fair representation by plaintiff's union in processing his grievance.

This is a succinct and unequivocal expression of a classic hybrid 301 cause of action.

10. The Supreme Court in *Breininger*, while forcefully upholding the separate vitality of duty of fair representation claims as "a cause of action separate from the claim against the employer," implicitly upheld *Bagsby* and numerous other cases when it stated, in the same breath, that "a section 301 suit against the employer and a fair representation claim against the union are 'inextricably interdependent.'" 110 S.Ct. at 435 n. 8 (quoting *United Parcel Service v. Mitchell*, 451 U.S. 56, 66–67, 101 S.Ct. 1559, 1566, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring)).

11. Because Anchor clearly did not breach the NMATA and appellant had no legal right to retain his job with the company, it would, in any event, be difficult for a jury to place a dollar value on appellant's injury arising out of the alleged breach of duty of fair representation. This observation further underscores the logic of the *Bagsby* rule, and suggests that appellant's victory would indeed be a hollow one if the Supreme Court's decision in *Breininger* were construed to implicitly overrule *Bagsby* and numerous other federal decisions. As explained above, this court is reluctant to ascribe such sweeping and unseemly implications to the *Breininger* opinion.

1. We cited language from *Bagsby* which referred to *Hines v. Anchor Motor Freight*, 424 U.S.

WELLFORD, Circuit Judge, concurring in part and dissenting in part:

We affirmed the district court's grant of a directed verdict to the defendant Teamster Local Union No. 580 (the union) and to the employer, Anchor Motor Freight (Anchor), on November 14, 1989, in a decision reported at 889 F.2d 718 (6th Cir.1989). I believe that we decided the case at that time properly in accord with precedent in this circuit and not contrary to our understanding of Supreme Court decisions on "hybrid" actions brought under § 301 of the LMRA, 29 U.S.C. § 185(a). The facts in this appeal by the truck driver employee, White, are set out in that opinion. We relied then upon *Bagsby v. Lewis Bros., Inc. of Tennessee*, 820 F.2d 799 (6th Cir. 1987);[1] *Breininger v. Int'l Assoc., Local Union No. 6*, 849 F.2d 997 (6th Cir.1988);

554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976). *Hines* reversed our court's decision reported at 506 F.2d 1153 (6th Cir.1974), stating:

> Under the rule announced by the Court of Appeals, unless the employer is implicated in the Union's malfeasance or has otherwise caused the arbitral process to err, petitioners would have no remedy against Anchor even though they are successful in proving the Union's bad faith, the falsity of the charges against them, and the breach of contract by Anchor by discharging without cause. This rule would apparently govern even in circumstances where it is shown that a union manufactured the evidence and knows from the start that it is false; or even if, unbeknownst to the employer, the union has corrupted the arbitrator to the detriment of disfavored union members. As is the case where there has been a failure to exhaust, however, we cannot believe that Congress intended to foreclose the employee from his § 301 remedy otherwise available against the employer if the contractual processes have been seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or arbitrary conduct.

> . . . . .

> But it is quite another matter to suggest that erroneous arbitration decisions must stand even though the employee's representation by the union has been dishonest, in bad faith, or discriminatory; for in that event error and injustice of the grossest sort would multiply.

> . . . . .

> Petitioners, if they prove an erroneous discharge and the Union's breach of duty tainting the decision of the joint committee, are

and on *Adkins v. International Union of Electricians, Radio & Machine Workers*, 769 F.2d 330 (6th Cir.1985).

*Breininger* held that "if the employee fails to affirmatively allege that his *employer* breached the collective bargaining agreement ..., he cannot prevail." 849 F.2d at 999 (emphasis in original), citing *Bagsby v. Lewis Brothers, Inc. of Tennessee*, 820 F.2d 799, 801 (6th Cir.1987). The Supreme Court, however, on December 5, 1989, in —— U.S. ——, 110 S.Ct. 424, 107 L.Ed.2d 388 reversed our *Breininger* holding and held that the above quote "is a misstatement of existing law." 110 S.Ct. at 432, citing *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

In *Breininger*, the Supreme Court went on to hold

> Federal courts have jurisdiction to hear fair representation suits whether or not they are accompanied by claims against employers ... [I]ndependent federal jurisdiction exists over fair representation claims....

110 S.Ct. at 434. Our decisions in *Adkins* and *Bagsby* were overturned by the Supreme Court in this regard.

The complaint in this case asserts a breach of the collective bargaining agreement by reason of discharge without just cause,[2] and the union's discriminatory and arbitrary failure to represent White properly, particularly in allegedly failing to present to the grievance hearing panel "highly relevant evidence" (work record and handling of comparable charges against other employees).

We have held in this case that because White failed to charge Anchor with discriminatory discharge in violation of Article 14 of the CBA, he cannot litigate this claim before this court on appeal. Today's opinion goes on to conclude that if the claim

against the employer failed, because White did not present evidence raising a genuine issue on the "major" accident factual question, then the claim against the union on the "interdependent" failure to represent claim must also fail. I believe that this reasoning is no longer valid in light of the Supreme Court's decision in *Breininger*, and that federal jurisdiction continues to exist on the claim against the union. *See also Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

White did, in fact, assert discriminatory conduct on the part of both employer and his union, although the assertion against the employer was perfunctory and conclusory. He did not make it clear that he claimed that Anchor was, in effect, retaliating against him because he supported TDU, and did not pursue proof to that effect at trial. I concur, then, in holding that the directed verdict in favor of Anchor is not error, although I find the issue to be close. I concur with the majority, then, in affirming the judgment for Anchor.

I must depart from the majority decision, however, in respect to the judgment against White in his claim against the union. I construe *Breininger* to mean what it says in holding that "whatever the employer's liability, the employee would still retain a legal claim against the union," and that "independent jurisdiction exists over fair representation claims." *Id.* 110 S.Ct. at 434. If independent jurisdiction exists in the first instance over a separate claim for failure to represent fairly, then it seems to me that it also exists even if a judgment has been rendered that the employer did not breach the collective bargaining agreement in the particular manner alleged by the plaintiff-employee.

---

entitled to an appropriate remedy against the employer as well as the Union. It was error to affirm the District Court's final dismissal of petitioner's action against Anchor.
424 U.S. at 570, 571, 572, 96 S.Ct. at 1059, 1059, 1060.

**2.** The complaint asserts that "Anchor wrongly concluded that the August 21 incident was a

'major' accident, chargeable against White," and then discharged him. White referred to Article 40 of the CBA relating to a "just cause" discharge, and asserted then that his discharge by Anchor was "discriminatory and unjust." In his claim against the union, he referred to his dissident TDU activities and asserted that the union acted against his interests, with "hostile discrimination."

If the employer has the right to discharge for involvement in a major accident, but if the discharge were also motivated by a retaliatory or discriminatory motive, or if in analogous cases other employees are disciplined less drastically, I would find that a separate cause of action may yet exist against the union if the trier of fact were to be persuaded that the union acted "arbitrarily and capriciously, and with hostile discrimination" in its representation of White, or failed to represent him altogether.

*Storey v. Local 327, Int'l Bhd. of Teamsters,* 759 F.2d 517 (6th Cir.1985), citing *Vaca v. Sipes,* stated:

The Supreme Court and various lower courts have recognized a cause of action for breach of a union's duty of fair representation which does not depend on section 301 as a jurisdictional base. In *Vaca v. Sipes* the Supreme Court stated that a primary justification for the preemption doctrine "is not applicable to cases involving alleged breaches of the union's duty of fair representation." 386 U.S. at 180–81, 87 S.Ct. at 911–12.

. . . . .

The duty of fair representation does not arise out of a collective bargaining agreement; it flows from the union's statutory position as exclusive representative and exists both before and after the execution of an agreement.

759 F.2d at 523. *Storey* also relied upon *Amalgamated Assoc. of Street Railway Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), in reaching that decision, and that case involved a suit against the employer, Kroger, despite the employee plaintiffs' contention that no valid collective bargaining agreement was in effect at the pertinent time. There was implicated then in *Storey* an interrelationship between the employee, the union, and the employer. In *Beriault v. Local 40, I.L. & W. Union,* 501 F.2d 258 (9th Cir.1974), the employee sued both the employer for breach of contract and the union for failure to represent properly. Although the claim against the employer was dismissed, the court held that the claim for unfair representation against the union might be pursued. I believe plaintiff White in this case should similarly be permitted to pursue his claim against the union.

Because I believe *Breininger* changed what this court, under *Bagsby, Breininger,* and *Adkins,* had believed to be the law in a hybrid § 301 fair representation case, I would hold that we should reverse the judgment rendered on the defendant union's motion for directed verdict. I dissent, therefore, from the affirming of the judgment for the union and would remand for further proceedings against it.