NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0808n.06
Filed: September 30, 2005

No. 04-4403

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

JOHN P. HASTINGS, LINDA HASTINGS,

    Plaintiffs-Appellees,

        v.                             On Appeal from the United
                                      States District Court for the
BRIAN HUBBARD,                      Southern District of Ohio

    Defendant-Appellant.

_____/

**Before:**     **GUY, BATCHELDER, and GILMAN**, Circuit Judges.

    **PER CURIAM.**   Defendant Officer Brian Hubbard appeals from an order denying

his motion for qualified immunity from suit on claims that he denied plaintiff John Hastings,

Sr., his Fourth Amendment rights to be free from unlawful seizure and the use of excessive

force in violation of 42 U.S.C. § 1983.[1] Defendant argues that he is entitled to qualified

immunity as a matter of law because plaintiff should be collaterally estopped by his no-

contest plea from denying certain facts. After review of the record and the arguments

presented on appeal, we affirm the district court's decision and decline to address the

arguments raised for the first time on appeal.

---

    [1]Plaintiffs are John Hastings, Sr., and his wife, Linda Hastings. Because no issues are raised
concerning her claim for loss of consortium, we refer to plaintiff in the singular.

**I.**

On Sunday, October 11, 1998, plaintiff John Hastings, Sr., his son, John Hastings, Jr., and two others were riding motorcycles home from a motorcycle event called the Oregonia Hill Climb. The traffic was heavy and they were stopped at a light northbound on Ohio State Route 48. When the light changed, plaintiff, who was following his son, began through the intersection. Traffic stopped, plaintiff's rear wheel began to skid, and he "laid down" the bike in the road to avoid a collision. Plaintiff stayed on the ground about a minute because he was upset and worried about what damage he might have done to his bike. A number of bystanders crowded around and tried to keep him from getting up. Plaintiff's son walked his and his father's motorcycles to the nearby parking lot of a used car dealership. He returned to help his father get away from the crowd, and some words were exchanged in the process. Plaintiff testified that he was not hurt and his bike was not damaged.

At approximately 4:00 p.m., Clearcreek Township Police Officer Brian Hubbard was on duty in a marked patrol car and received a dispatch call to respond to an accident at the intersection of State Route 48 and State Route 73. The dispatcher said the subject was "up and combative" and that there were about 100 people in the area. When Hubbard arrived at the intersection minutes later, he did not see an accident in the street. He did see a number of people in the parking lot of a bar, and they pointed him toward the parking lot of the car dealership next door. Hubbard saw three motorcycles and four people in the southern end of the lot, drove into the lot, and parked his patrol car two car lengths away from them. Plaintiff's son testified that he saw the police car, but plaintiff testified that he did not notice

the police car in the parking lot. Plaintiff said he sat in the used car lot only about three to five minutes before beginning to leave to go home. What happened after that is in dispute.

Plaintiff testified that he was the first to start to leave the parking lot. He was traveling at about five miles per hour past a car when the car door swung open and defendant jumped out and grabbed the handlebar of his motorcycle. The handlebar turned, plaintiff fell forward and, with his right hand, pulled the throttle "wide open." The bike wobbled, plaintiff's left hand came off the handlebar, and he was "ejected over the handlebars." The bike was extensively damaged and the impact of landing crushed in the forehead of plaintiff's helmet.

Officer Hubbard offered a different version of their encounter. When Hubbard arrived, he saw plaintiff with his helmet kicked back and redness on the side of his face. He also saw some damage to the area around the front light of plaintiff's motorcycle. Hubbard testified that he stepped out of his patrol car as plaintiff starting moving forward, held his hand up and said, "Sir, I need to talk to you." When plaintiff did not stop, Hubbard stepped back to get behind the door but was hit by the motorcycle handlebar and spun around. Hubbard testified that he reached around, grabbed plaintiff by his shoulder and pulled him from the motorcycle. Hubbard relied on these facts to argue that the physical contact with plaintiff was not a seizure under the Fourth Amendment.

Plaintiff testified that after he got up from the ground and walked toward the patrol car, defendant told him to place his hands on the trunk and frisked him. After plaintiff refused medical treatment, defendant placed him in handcuffs, told him he was being arrested for assaulting a police officer, and placed him in a squad car. Defendant had no further

contact with plaintiff after that point. Later, while in custody, plaintiff began experiencing severe pain and was taken for medical treatment. There seems to be no dispute that defendant was also injured in this encounter. Plaintiff testified during his deposition that he pleaded "no contest" to the charge of failing to comply with the order of an officer, although no documentary evidence of the plea was included in the record.

Plaintiff commenced this action in federal court on September 29, 2000, alleging that defendant's conduct in grabbing the handlebar of the moving motorcycle was both an illegal seizure and constituted the use of unnecessary and excessive force.

In November 2003, the case was reassigned by consent to a magistrate judge for all further proceedings. Defendant subsequently filed a motion for summary judgment asserting qualified immunity. The magistrate judge entered the order denying defendant's motion on September 28, 2004, and this appeal followed.

## II.

In an interlocutory appeal from the denial of a motion for summary judgment brought on the grounds of qualified immunity, we have jurisdiction to review the legal question of whether qualified immunity should have been granted. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). We may exercise jurisdiction over the appeal to the extent that it raises questions of law, even when the district court found genuine issues of fact precluded summary judgment. *Williams v. Mehra*, 186 F.3d 685, 689-90 (6th Cir. 1999) (en banc). Because we lack jurisdiction over factual issues, the defendant must essentially "concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Berryman v. Reiger*, 150 F.3d 561, 563 (6th Cir. 1998); *see also Beard v. Witmore Lake Sch. Dist.*, 402 F.3d 598,

602 (6th Cir. 2005). Qualified immunity is a question of law which we review de novo. *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996).

Under the doctrine of qualified immunity, "government officials performing discretionary functions[] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In considering a claim of qualified immunity, courts must first address the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a violation could be shown taking the facts in the light most favorable to the plaintiff, then the next step is to ask whether the right was "clearly established" in a particularized sense, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

## A.     Seizure

As recognized by the trial court, Officer Hubbard's arrival at the parking lot was not a seizure triggering the protections of the Fourth Amendment. "'[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen.'" *Illinois v. Lidster*, 540 U.S. 419, 425 (2004) (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983)) (alterations in original). No reasonable suspicion was required for him to be there or to approach the riders to ask them about the reported accident. Further, when the officer makes a show of authority but

the subject does not comply, there is no seizure for Fourth Amendment purposes. *California v. Hodari D.*, 499 U.S. 621, 629 (1991) (defendant who did not comply with order to stop was not seized until he was tackled).

Defendant argued in the trial court, based on his version of the events, that he did not grab the handlebar but was struck by it and merely reacted in self defense. As such, he claimed no seizure occurred until plaintiff was handcuffed and placed under arrest. This was contradicted by plaintiff's testimony that defendant grabbed the handlebar of the moving motorcycle, which we must accept for purposes of this appeal. As such, this would, as the trial court found, be a seizure because there was "governmental termination of freedom of movement *through means intentionally applied*." *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original).

The trial court found that, when the evidence was taken in the light most favorable to plaintiff, defendant did not possess a reasonable and articulable suspicion that plaintiff had been involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968). Specifically, leaving out the disputed evidence that plaintiff's face was red and there was damage to his motorcycle, the trial court found the information defendant had, based on the dispatcher's report and his observations upon arriving at the intersection, was not sufficient to establish reasonable suspicion that plaintiff had been involved in an accident, that he left the scene of an accident, that he had violated the law, or that he had been driving his motorcycle while under the influence of alcohol.

Taking a different tack, defendant argues for the first time on appeal that plaintiff should be collaterally estopped by his no-contest plea from denying that there was reasonable

suspicion, even probable cause, to believe he committed an offense before the stop was effected. In other words, defendant argues, if plaintiff cannot deny that he refused an order to stop, then that fact can be considered with the other facts leading up to the seizure to determine whether there was reasonable suspicion at the time of the seizure or whether the force used was excessive, and to conclusively establish probable cause to arrest. *Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988) (Ohio nolo plea barred claim that plaintiff was arrested without probable cause); *see also Sandul v. Larion*, No. 94-1233, 1995 WL 216919 (6th Cir. Apr. 11, 1995) (unpublished decision).

The record concerning the plea is incomplete and the impact of the plea on the claims in this case was not presented or developed in the trial court. This court generally will not consider an issue raised for the first time on appeal except in exceptional circumstances or when failure to do so would result in a plain miscarriage of justice. *White v. Anchor Motor Freight, Inc.*, 889 F.2d 718, 722 (6th Cir. 1989); *Pinney Dock & Trans. Co. v. Penn. Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988). We find no reason to depart from the general rule in this case, but note that our decision does not preclude defendant from raising these arguments in the district court as this is an interlocutory appeal.

## B.     Excessive Force

A seizure is required for an excessive-force claim to be cognizable under the Fourth Amendment. *County of Sacramento v. Lewis*, 523 U.S. 833, 844-45 & n.7 (1998). Claims of excessive force in effecting a seizure are analyzed under the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of the reasonable officer on the scene and not with the benefit of 20/20 hindsight.

*Graham v. Connor*, 490 U.S. 386, 395-96 (1989). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' . . . violates the Fourth Amendment." *Id.* at 396 (citation omitted). Relevant considerations include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

While accepting the allegation that grabbing the handlebar caused plaintiff's hand to pull the throttle "wide open," defendant argues that this was an unexpected result that should not serve to convert an otherwise reasonable use of force into the use of excessive force. *See, e.g.*, *Rasmussen v. Larson*, 863 F.2d 603 (8th Cir. 1988) (involving minimal force used to arrest elderly person who died from heart attack). Defendant argues that it would not have been objectively unreasonable under the circumstances to have grabbed the handlebar of a motorcycle moving at five miles per hour. We must accept for purposes of this appeal: (1) that defendant did not have reasonable suspicion that plaintiff had violated or was violating the law; (2) that plaintiff did not refuse to comply with an order to stop; and (3) that defendant opened the car door, jumped out, and grabbed the handlebar. Under these circumstances, even from the perspective of a reasonable officer on the scene, the force used would be objectively unreasonable.

Defendant also argues that even if a constitutional violation could be shown, the right was not clearly established "'in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 125 S. Ct. 596, 599 (2004) (quoting *Saucier*, 533 U.S. at 201) (general standards only sufficient in "an obvious case"). In this case, the

magistrate judge looked beyond the general standard and found that the decision in *Adams v. Metiva*, 31 F.3d 375 (6th Cir. 1994), "would have alerted an objectively reasonable officer in Officer Hubbard's position that grabbing the handlebars to stop Mr. Hastings' motorcycle did not constitute an objectively reasonable use of force in the situation." The magistrate judge explained:

> In *Adams*, decided in August 1994, the plaintiff had either not violated the law or at most committed a mere seatbelt infraction. 31 F.3d at 385. The plaintiff, moreover, was not acting in a threatening or violent manner and was not attempting to flee. *Id.* The Court of Appeals held that if these facts were accepted as true, the officer used excessive force in violation of the Fourth Amendment by spraying the plaintiff in the face with mace. *Id.* at 385-86. Similarly, a reasonable officer in Officer Hubbard's position – viewing the facts in Plaintiff's favor – would have understood that Mr. Hastings did not pose a threat to the officer, that he was not attempting to flee or evade the stop, and that no reasonable suspicion existed to conclude that Mr. Hastings had violated or was violating the law. Consequently, a reasonable police officer in Officer Hubbard's situation would have known that grabbing Mr. Hastings' motorcycle handlebars causing him to be thrown over the handlebars and onto the pavement of the parking lot violated Mr. Hastings' clearly established right to be free from excessive use of force. 31 F.3d at 385.

Without directly challenging this conclusion, defendant again relies on the no-contest plea to argue that plaintiff is precluded from denying that he failed to comply with an officer's order and that therefore a reasonable officer could have believed plaintiff was attempting to evade the stop. Because this argument is raised for the first time on appeal, we leave it for the trial court to address in the first instance. Accepting the plaintiff's version of the contested facts, the magistrate judge did not err in finding that it would have been clear to a reasonable officer at the time that it would be objectively unreasonable to use physical force to stop plaintiff's moving motorcycle from leaving the parking lot.

## C.　　Arrest

"Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 125 S. Ct. 588, 593 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). It does not depend on the officer's subjective motivation or his stated reason for making the arrest. *Id.* at 594 (holding that the "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"). For the reasons stated above, we do not address defendant's claim that the no-contest plea establishes the fact that plaintiff failed to comply with an order of an officer and that therefore there was probable cause to believe plaintiff had committed the offense of failing to comply with the order of a police officer.

In the alternative, defendant argues that, even accepting plaintiff's testimony as true, a reasonable officer could believe plaintiff had committed an assault on an officer in violation of Ohio law. *Palshook v. Jarrett*, 120 F. Supp.2d 641, 649-50 (N.D. Ohio 2000) (reasonable officer could conclude plaintiff's actions were an intentional effort to cause the officer physical harm). This argument, however, also rests on the contention that plaintiff should be collaterally estopped from denying that he failed to comply with an officer's order. Without that, defendant must accept plaintiff's testimony that the car door opened as he went by, and that defendant jumped out and grabbed the handlebar in which case there is no basis to find there was probable cause to believe plaintiff committed an intentional assault on defendant.[2]

---

[2]Assault was defined at the time of the offense as knowingly causing or attempting to cause physical harm, or recklessly causing serious physical harm, and was a felony if it is committed against an officer while in the performance of his official duties. OHIO REV. CODE § 2903.13.

We **AFFIRM** the denial of defendant's motion for summary judgment on the grounds of qualified immunity, but express no opinion on how the plaintiff's no-contest plea might alter the qualified immunity analysis or impact a motion for summary judgment on remand.