Ted **PRATT, Plaintiff–Appellant,**

v.

**UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 1435, Defendant–Appellee.**

No. 90–3783.

United States Court of Appeals, Sixth Circuit.

Argued April 5, 1991.

Decided July 23, 1991.

Rehearing and Rehearing En Banc Denied Sept. 13, 1991.

Thomas A. Sobecki (argued), Toledo, Ohio, for plaintiff-appellant.

Joan Torzewski (argued), Lackey, Nusbaum, Harris, Reny & Torzewski, Toledo, Ohio, for defendant-appellee.

Before MERRITT, Chief Circuit Judge, and KENNEDY and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-appellant Ted Pratt appeals the district court's grant of summary judgment for the defendant-appellee United Automobile, Aerospace and Agricultural Workers of America, Local 1435 ("the Union") in this action for breach of the Union's duty of fair representation in relation to the termination of Pratt's employment. For the reasons that follow, we reverse and remand for further proceedings.

I.

Pratt filed his complaint on February 15, 1989. In his complaint he alleged jurisdiction based upon Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), and 28 U.S.C. § 1337. Pratt also claimed pendent jurisdiction over his state law claims.

In Count I of his complaint, Pratt alleged that the Union breached its duty of fair

representation. In addition, Pratt alleged fraud (Count II); negligent misrepresentation (Count III); interference with contracts (Count IV); intentional infliction of emotional distress (Count V); and negligent infliction of emotional distress (Count VI). Each of these allegations was in relation to the termination of Pratt's employment with Chrysler corporation.

Pratt had been an employee of Chrysler from May of 1968 and had been a member of the Union throughout his employment at Chrysler. In his later years with Chrysler, Pratt suffered from a recurring back problem which resulted in his missing a number of work days. On July 20, 1988, Pratt experienced a severe back attack and could not go to work. He testified that he tried unsuccessfully to see his regular physician on that day, however, on July 21, he obtained an appointment with another doctor who put him on sick leave for the remainder of the week.

The following week there was a shutdown in Pratt's department. Pratt testified that he called the plant on the Sunday evening before the shutdown to make sure it was going to occur. As a consequence, he did not report to work during that week. The Union suggests that due to Pratt's seniority status, he might have been able to bump a worker from another department. Thus, the Union argues that Pratt was not necessarily on lay-off status during the week of July 24. Due to a strep throat problem Pratt missed the following week of work. This medical condition necessitated another trip to the doctor which led to him being placed on sick leave for the entire week.

During the first week in August, Pratt received a call from Dennis Crawford, his Local 1425 union steward. Crawford informed him that he needed a doctor's excuse for a day in June, three days prior to the shutdown in July, and the week following the shutdown. Pratt told Crawford he had excuses for all that time except the date in June. He testified that he did not know anything about an absence in June.

The next day, Pratt received a letter from Chrysler informing that him that he had been absent from work since July 19, 1988 and that he had to provide adequate reasons for his absence. The letter also required that Pratt report to the Plant Employment Office by August 15, 1988, regarding the unexcused absences. That same day, Pratt received a telephone call from Jack Bartram, the Benefits Plan Representative for the Union. Bartram informed Pratt that he was required to produce excuses for the day in June, the week of the shutdown, the week following the shutdown and all the time up to the time he returned to work. Pratt testified that he asked Bartram why he had to have an excuse for the week of the shutdown. Bartram reportedly said that he was told that these excuses were all required. Pratt questioned Bartram about the Chrysler letter, and Bartram said he would be dismissed if he did not come up with medical excuses for all the time out. Pratt informed Bartram that he could not produce an excuse for the week of the shutdown or the unknown day in June.

On August 15, Pratt reported to the employment office with his wife. He encountered Bartram behind the counter and asked him if he still needed to have an excuse for the shutdown week and the June day. Bartram said yes. Pratt then protested and asked if his job would be terminated. Bartram again said yes. Pratt did not produce the medical excuses for the days he had been ill, nor did he converse with any representative of Chrysler after his conversation with Bartram. However, the court found that when he left the office he was under the impression that he had been fired.

On his way to his car, Pratt ran into Woody McClain and Tom Orosz. McClain and Orosz were both union officials. They asked him what he was going to do. He responded that he might have a job in Mississippi. McClain told Pratt that it would be in his best interest to immediately go back to the office and file a quit slip. McClain reportedly indicated that he could get Pratt a job in his department in a couple of months, but only if Pratt quit and was not fired. Pratt then returned to the

office and signed a quit slip. As his reason for quitting, he stated that he had another job.

Several weeks later, Pratt contacted John Rhodes, the Local 1435 committeeman, about getting his old job back. Rhodes reportedly told him that "a quit is a quit" and the Union did not have to represent him since he quit. Pratt testified that he told Rhodes that he only signed the quit slip because McClain had told him to do so. Reportedly, Rhodes put Pratt on hold and asked McClain if this was true. Rhodes then got back on the line and said that McClain denied telling him to quit.

Pratt testified that he understood that he was required to exhaust all union procedures before he could sue in federal court. He alleges that he attempted to do this by calling his brother, Rolland Pratt, who was a former union official and an employee at the plant for 22 years. Rolland Pratt evidently contacted James Watkins, a UAW international servicing representative for the plant. Watkins reportedly told Rolland Pratt that since Pratt had quit there was nothing they could do to get his job back.

Pratt brought this action in federal district court without instituting any intra-union proceeding. The Union filed for summary judgment prior to trial and the district court granted the Union's motion and dismissed the case in its entirety, including the pendent state claims. This timely appeal followed.

## II.

█ Pratt first contends that the district court erred in concluding that jurisdiction in this case was based upon Section 301 of the Labor Management Relations Act, when in fact, the case was brought under Section 9(a) of the National Labor Relations Act. Section 301 provides a cause of action against an employer or a union for injuries resulting from a breach of a collective bargaining agreement. 29 U.S.C. § 185(a) (1988); *Bagsby v. Lewis Bros. Inc. of Tenn.*, 820 F.2d 799 (6th Cir.1987). Under *Bagsby*, to be successful in a Section 301 action against the union *or* the employer, the plaintiff must show that the employ-

er breached the collective bargaining agreement *and* that the union breached its duty of fair representation. 820 F.2d at 801. "Unless [the plaintiff] demonstrates *both* violations, he can not succeed against either party." *Id.* (emphasis original).

█ Section 9(a) of the National Labor Relations Act, by virtue of its grant of exclusive representation status to a union over employees that make up a bargaining unit, creates a duty of fair representation on the representative union. 29 U.S.C. § 159(a) (1988); *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 367, 11 L.Ed.2d 370 (1964). This duty does not depend on the existence of a collective bargaining agreement. Rather, "it flows from the union's statutory position as exclusive representative and exists both before and after the execution of an agreement." *Storey v. Local 327*, 759 F.2d 517, 523 (6th Cir.1985). Section 9(a), in conjunction with 28 U.S.C. § 1337, creates a jurisdictional basis for actions for breach of the duty of fair representation independent of Section 301. *Breininger v. Sheet Metal Workers Int'l*, 493 U.S. 67, 110 S.Ct. 424, 434–35, 107 L.Ed.2d 388 (1989); *Storey*, 759 F.2d at 518–19.

█ Pratt asserts that while his complaint alleged jurisdiction based upon both Section 301 and Section 9(a), it was actually an action against the Union for breach of its duty of fair representation independent of the collective bargaining agreement. Therefore, Pratt contends, the district court erred in finding that Pratt's claim against the Union failed because he had not alleged a breach of contract on the part of Chrysler. We agree.

In rejecting Pratt's claim of independent jurisdiction for his action under Sections 9(a) and 1337, the district court relied upon *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555 (6th Cir.1990). In *White*, an employee was discharged for being involved in a "major" accident. Such a discharge was permissible under the collective bargaining agreement then in place. The employee proceeded through existing union remedies and then brought an action in district court.

The complaint alleged jurisdiction under both Section 301 and Section 9(a). After trial, the district court concluded that the plaintiff had produced no evidence that the classification of the action as "major" was inappropriate; therefore, there was no breach of the bargaining agreement by the employer. The court also dismissed the plaintiff's claim against the union for breach of fair representation because it determined that breach of contract by the employer was essential to make out a claim against the union. Plaintiff objected, arguing that there was substantial evidence to suggest that other employees had kept their jobs despite comparable accidents, and that he could have too if the union had adequately protected his interests. Thus, relying on the Supreme Court's decision in *Breininger,* he argued that he had an independent basis for jurisdiction under Section 9(a), even if his action under Section 301 had failed.

This court disagreed. The court found that plaintiff's complaint stated a classic "hybrid" claim under Section 301. Noting that the plaintiff's complaint challenged his wrongful discharge by the employer and a breach of fair representation by the union, the court held that *Breininger* was not intended to change existing law on Section 301 claims by allowing plaintiffs to circumvent the requirement of proving a claim against the employer *and* the union by "artfully pleading 28 U.S.C. § 1337 as a jurisdictional basis and casting their duty of fair representation claims as independent causes of action in what are, in substance, hybrid 301 claims." *Id.* at 562. To reach this conclusion, the majority asserted:

> In none of the cases in which this and other courts have asserted jurisdiction under 28 U.S.C. § 1337 over separate causes of action alleging breach of union's duty of fair representation ... had there been a colorable allegation that a collective bargaining agreement had been breached.

*Id.* at 560–61. Thus, *White* seemed to create a test which required that if a plaintiff's complaint stated a "colorable claim" under the collective bargaining agreement,

it must be construed as a Section 301 claim rather than a Section 9(a) claim. Since in the district court's view, Pratt's claim was essentially one based upon an interpretation of the collective bargaining agreement, it met the "colorable claim" test and should be construed as a Section 301 action.

We find the district court's reliance on *White* to be misplaced. First, this case is factually distinguishable from *White.* Unlike the plaintiff in *White,* Pratt did not allege any breach of the collective bargaining agreement by his employer in his complaint. Rather, he alleged that the Union breached its duty of fair representation by failing to assist him in resolving his difficulties with his absences for the day in June and the week of the shutdown, for misrepresenting the days for which he actually needed excuses and for inducing him to quit and then failing to assist him in getting his job back. *See* Complaint. Pratt never named Chrysler as a defendant and he did not file a grievance under the collective bargaining agreement. While his cause of action involves a dispute over the termination of his employment at Chrysler, the complaint alleges breaches of duty on the part of the union *independent* of the collective bargaining agreement. Thus, unlike the plaintiff in *White,* Pratt's complaint does not allege facts to support a "colorable claim" under the collective bargaining agreement. Further, while Pratt's complaint alleges jurisdiction under both Section 301 and Section 1337, Pratt only alleges facts to support an action under Sections 9(a) and 1337. Thus, Pratt's complaint does not present a "quintessential hybrid 301 claim" like the complaint in *White.*

Further, the Supreme Court's opinion in *Breininger* provides substantial and binding guidance as to how we are to interpret our jurisdiction under Section 9(a). In *Breininger,* the Supreme Court reversed this court's opinion in *Breininger v. Int'l Assoc., Local Union No. 6,* 849 F.2d 997 (6th Cir.1988). Describing the question before it, the Court stated:

> The Court of Appeals below ... held that if an employee fails to allege that his

*employer* breached the collective-bargaining agreement, then he cannot prevail in a fair representation suit against his *union.* This is a misstatement of the existing law.

*Breininger,* 110 S.Ct. at 432 (emphasis original). The Court went on to hold:

> While in *Vaca* [*v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)] an allegation that the union had breached its duty of fair representation was a necessary component of the § 301 claim against the employer, *the converse is not true here: a suit against the union need not be accompanied by an allegation that an employer breached the contract, since whatever the employer's liability, the employee would still retain a legal claim against the union.*

*Id.* at 434 (emphasis added).[1]

The case before us would seem to present precisely the situation described in *Breininger.* The plaintiff, perhaps realizing he has no claim against the employer under the collective bargaining agreement, alleges claims based upon independent breaches of duty on the part of the union. As the Supreme Court in *Breininger* makes clear, in such circumstances, a plaintiff need not state a claim under Section 301 to state a claim under Section 9(a). In other words, the district court was in error in finding that Pratt's complaint did not state a claim under Section 9(a).

### III.

■ Pratt next contends that the district court erred in finding that his action against the Union was barred because he had not exhausted his remedies under the collective bargaining agreement and his intra-union remedies. As we find that Pratt's claim is properly understood as an independent action against the Union under Section 9(a), rather than a Section 301 action against the Union and the employer, Pratt is not required to exhaust remedies under the collective bargaining agreement because no breach was alleged. *See Miller*

*v. Hotel, Motel, & Restaurant Employees & Bartenders Union Local 471,* 1990 W.L. 134847, at 5 (N.D.N.Y.1990) (exhaustion of contractual grievance procedures not required where no allegation of breach is made); *Gorski v. Local Union 134, Int'l Brotherhood of Electrical Workers,* 636 F.Supp. 1174, 1183 (N.D.Ill.1986) (exhaustion of contractual grievance procedures not required where there is no claim against employer to grieve).

■ However, under relevant law, Pratt may have been required to exhaust intra-union remedies before proceeding in the district court. *See Clayton v. Automobile Workers,* 451 U.S. 679, 681, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981). The *Clayton* Court summarized the rules applicable to a court's exercise of its discretion to excuse exhaustion of internal procedures as follows:

> In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedure would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under [Section] 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

451 U.S. at 689, 101 S.Ct. at 2095. Pratt argues that the second factor in *Clayton* is applicable in this case because the union's internal remedies do not provide for compensatory or punitive damages. *See Miller,* 1990 W.L. 134847 at 5 (in duty of fair representation case under Section 9(a) plaintiff was excused from exhausting his intra-union remedies because union's constitution and bylaws made no express provision for damages).

In response, the Union asserts that the second requirement in *Clayton* is satisfied

---

1. *See, also White,* 899 F.2d at 563 (Judge Wellford dissenting) ("If independent jurisdiction exists in the first instance over a separate claim for failure to represent fairly, then it seems to me that it also exists even if a judgment has been rendered that the employer did not breach the collective bargaining agreement[.]").

if internal union remedies could *either* reactivate the plaintiff's grievance *or* award him full relief. *Wagner v. General Dynamics*, 905 F.2d 126, 128 (6th Cir.1990). The Union asserts that Pratt's grievance could be reactivated, and therefore he had an obligation to exhaust. We find this analysis to be flawed because Pratt never had a grievance against Chrysler which could be reactivated. His complaint does not allege a breach of the employment contract. Rather, Pratt's complaint only asks for damages based upon alleged acts by the Union outside the contract. The Union also cites to several Public Review Board decisions which suggest that UAW remedies can include awards of monetary relief. *See In re: Appeal of Albert Dawkins*, PRB Case No. 349 (1975); *In re: Appeal of Robert J. Wright*, PRB Case No. 884 (1990). However, we do not find these cases to be dispositive.

The truth is that the district court in this case never engaged in any analysis of the *Clayton* factors in reaching its conclusion that Pratt had failed to exhaust his intra-union remedies. The court also seemed to be substantially influenced by the Union's argument, rejected above, that Pratt could have reactivated his grievance against Chrysler. Thus, the record is simply insufficiently developed for us to make a determination of whether the relief sought by Pratt was, in fact, available through the pursuit of UAW remedies.

If intra-union procedures could have provided Pratt with his requested relief had he pursued those procedures, then *Clayton* and *Wagner* may warrant a finding that Pratt was required to exhaust his intra-union remedies before bringing this action. In *Wagner*, we recently stated:

"As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by the employer and union as the mode of redress" before filing suit. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 [85 S.Ct. 614, 616, 13 L.Ed.2d 580] [1965]. According to *Clayton*, ... this exhaustion requirement similarly applies to internal union appeals procedures provided by the union constitution.

905 F.2d at 127. Pratt argues that his brother's call to the union constituted an "attempt" within the meaning of *Wagner*. Further, he argues that the union's reported response, "a quit is a quit" suggested that he had no remedy under union rules.

On the record before us, we are unable to address the factual and legal contentions surrounding Pratt's alleged failure to exhaust intra-union remedies. Therefore, we remand this issue to the district court for further analysis under the factors articulated in *Clayton* and this court's decision in *Wagner*.

## IV.

Pratt's last contention is that the district court erred in finding that Pratt's state law claims were preempted by Section 301. As we have held that this case should have been considered as an action under Section 9(a) rather than Section 301, the district court's finding that Pratt's state-law claims were preempted by Section 301 cannot stand. Nevertheless, it may be the case that these claims are preempted by Section 9(a).[2] However, this precise issue was not briefed by the parties, nor presented at oral argument. Therefore, we think the proper course is to remand for further proceedings rather than attempt to navigate this largely uncharted legal territory without

---

2. The scope of preemption under Section 9(a) is largely a new area of the law, perhaps because it has only been clear that an action under 9(a) could take place independent of Section 301 since the Supreme Court's opinion in *Breininger*. In *Richardson v. United Steelworkers of America*, 864 F.2d 1162, 1165–67 (5th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990), the court suggested that the duty of fair representation arose under federal statutory law rather than state law and therefore federal law should govern. The court further stated that claims based upon the union's duty of fair representation preempted state claims except those which arose under separate state law duties which existed independently of the NLRA-established collective bargaining relationship. *Id.* at 1167. We express no opinion as to whether the court's analysis in *Richardson* applies in the instant case.

**392**

giving the parties an opportunity to present their legal arguments and without the benefit of a fully developed record below. *Cf. United States v. Jenkins*, 904 F.2d 549, 554 n. 3 (10th Cir.1990) (refusing to hear an issue raised for first time in reply brief because the issue was complex and had not been fully briefed by both parties).

### V.

In sum, we find the district court erred in finding that this action was not properly before it as an action under Section 9(a) of the National Labor Relations Act. Further, as we are unable to determine on the extant record whether Pratt's Section 9(a) claim was nevertheless properly dismissed due to his failure to exhaust intra-union remedies, the district court's grant of summary judgment is VACATED and we REMAND this issue for further proceedings. Finally, the district court's finding that Pratt's state-law claims were preempted by Section 301 is VACATED and those claims are REMANDED to the district court for further proceedings consistent with this opinion.