**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**The ESAB GROUP, INC., dba, Esab Welding and Cutting Products, et al., Defendants.**

**No. 1:00 CV 2497.**

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 19, 2002.

---

Howard R. Besser, U.S. Equal Employment Opportunity, Cleveland, OH, William E. Gerstenslager, Gerstenslager & Obert, Solon, OH, Solvita A. MacMillan, Solvita A. McMillan, John D. Sargent, C. Larry Watson, U.S. Equal Employment Opportunity, Cleveland, OH, for Plaintiff.

Joyce Goldstein, Bryan P. O'Connor, Goldstein & O'Connor, Cleveland, OH, Hayes C. Stover, Kirkpatrick & Lockhart LLP, Pittsburgh, PA, for Defendants.

### Memorandum of Opinion and Order

GAUGHAN, District Judge.

### Introduction

This matter is before the Court upon cross motions for summary judgment filed by Defendant United Automobile, Aerospace and Agricultural Implement Workers of America, Local 1834 (hereafter "UAW" or "the union") (Doc. 23), Defendant the ESAB Group, Inc. dba ESAB Welding and Cutting Products (hereafter "ESAB") (Doc. 24), Plaintiff the Equal Employment Opportunity Commission (hereafter "EEOC") (Doc. 27) and Intervenor Plaintiff Ivan Stowers, Jr. (hereafter "Stowers") (Doc. 26). This case arises out of alleged unlawful employment practices at ESAB, including that ESAB failed to maintain the confidentiality of medical records concerning Stowers and denied him the opportunity to work overtime based on his disability. For the following reasons, Defendant UAW's Motion for Summary Judgment is GRANTED; Defendant ESAB's Motion for Summary Judgment is GRANTED; Plaintiff EEOC's Motion for Summary Judgment is DENIED; and Intervenor Plaintiff's Motion for Summary Judgment is DENIED.

### Facts

This action was filed by the EEOC on behalf of Stowers against ESAB, generally alleging that it violated Title I of the

Americans with Disabilities Act, (hereafter "ADA")[1] in making unauthorized disclosures of employee medical information. While the Complaint contains no allegations against the UAW, it was named a "Rule 19 Defendant" in that as a party to a collective bargaining agreement with ESAB it is alleged that complete relief cannot be accorded in its absence. Stowers was granted leave to intervene in this action as a plaintiff. The Intervening Complaint alleges that the union has failed to protect plaintiff's "contractual rights consistent with the collective bargaining agreement." With regard to ESAB, it restates the alleged violations regarding the confidentiality of medical records contained in the EEOC's complaint and adds that ESAB "failed to allow Plaintiff the opportunity to work overtime based upon his disability and in violation of the bargaining agreement." Finally, the Intervening Complaint alleges that ESAB violated Ohio's anti-discrimination statute by "discriminat[ing] against Plaintiff based upon his disability and fail[ing] to provide him with the opportunity to work overtime in a manner in accord with the prevailing collective bargaining agreement...."

Stowers was hired by ESAB on October 19, 1992. At all relevant times, Stowers has been a member of the UAW. (Stowers Depo. at 6, 116). He was hired as an "X-man" or hourly employee who fills in for other employees and is subject to swing shifts. (Stowers Depo. at 6, 11).

Stowers subsequently learned that he had diabetes and, by early 1996, he required multiple insulin injections each day to keep his blood sugar at normal levels. (Stowers Depo. at 22, 33–35). Stowers stated that he gives himself insulin injections near his locker or in the lunchroom

at ESAB and has tested his blood sugar levels in the lunchroom. (Stowers Depo. at 21–22, 167, 173).

In mid–1996, Stowers bid on and was awarded a job in the Clean Coil Department, working a straight day shift. (Stowers Depo. at 11–12, 14, 26). His position in the Clean Coil Department subsequently became subject to rotating shifts.[2] (Stowers Depo. at 14). Stowers experienced difficulty controlling his blood sugar levels while working the rotating shifts. (Stowers Depo. at 26). In May 1996, he gave Ken Goeke, ESAB's manager of employee relations, a letter from his physician, Dr. Daniel Weiss, in which Dr. Weiss indicated that Stowers had Type I diabetes mellitus and could best manage this condition by working a "stable day shift." (Weiss letter, UAW Ex. C). Stowers asked Goeke for an accommodation which would authorize him to work the day shift only. (Stowers Depo. at 24–26).

Goeke advised Stowers that the seniority provisions of the collective bargaining agreement barred the company from displacing a more senior worker in order to accommodate Stowers, but indicated that he would discuss the matter with a UAW representative. (Goeke Depo. at 25–27).

In June 1996, after consulting with union officials, ESAB assigned Stowers to a "permanent X-man job" wherein he would be required to work from 8:00 a.m. to 4:00 p.m. for varying five-day intervals filling in for other workers who were absent. (Goeke Depo. at 26–27, 50–51; UAW Ex. G). The collective bargaining agreement references a similar position but requires the replacement worker to complete the same shift as the absent employee. (Goeke Aff. ¶ 5). ESAB therefore created

---

1. 42 U.S.C. § 12112(a).

2. Under this schedule, the employee works a 4:00 p.m. to 12:00 a.m. shift for seven days,

then gets two days off, works from 8:00 a.m. to 4:00 p.m. for seven days, gets two days off and works for six days from 12:00 a.m. until 8:00 a.m. (Stowers Depo. at 169).

this position for Stowers in order to comply with his need for steady day shift employment and because Stowers did not have sufficient seniority to obtain any of the 8:00 a.m. to 4:00 p.m. positions listed in the collective bargaining agreement. (Goeke Aff. ¶ 5; Goeke Depo. at 31; 52–54, 85–86; Houser Depo. at 14–16; Stowers Ex. 4).[3]

In this new position, Stowers was assigned to a "hodgepodge of [tasks] to keep him occupied." (Houser Depo. at 14). The record reflects that he was generally assigned, on a weekly basis, to fill in at a specific job classification. (Stowers Ex. 1). If no job opening was available, however, he was placed on special assignment and sometimes performed one job at the beginning of his shift and a different job at the end of his shift. (Stowers Ex. 1; Ruona Depo. at 23–24).

ESAB and Stowers disagreed as to whether overtime work would be available in this new assignment. (Goeke Depo. at 52). Ultimately, ESAB prepared a document which described the permanent X-man job and indicated that Stowers would be eligible for overtime and could also bid on other positions. (UAW Ex. G, H). Stowers refused to sign the document and Goeke continued to maintain that Stowers was not eligible to work overtime in light of the forty-hour work restriction and the fact that Stowers did not work changing shifts. (UAW Ex. F, G; Goeke Depo. at 52–54).

Stowers later indicated that in addition to his daylight shift requirement, he needed to work Monday through Friday only. (Stowers Ex. 5). Harold Goeke asked Stowers to obtain additional information from his physician concerning his recommendations about Stowers's work schedule. (Goeke Depo. at 41). On September 13, 1996, Dr. Weiss submitted a letter to ESAB which provided in relevant part:

> *** Although his blood sugar control is now better on an 8:00 a.m. to 4:00 p.m. shift, his varying activities during work and his varying days off prevent optimum glycemic control. Mr. Stowers' health requires him to work Monday through Friday in a similar level of activity and a similar job position. His hours should remain 8:00 to 4:00. ***

(UAW Ex. H).

It is undisputed that following ESAB's receipt of this letter, ESAB had scheduled Stowers to work only Monday through Friday, 8:00 a.m. to 4:00 p.m. (Stowers Depo. at 59).[4]

ESAB posted a "manning schedule" available to the human resources department and those with a "need to know." (Goeke Aff. ¶ 7–8). The schedule utilized designations for employee vacancies such as " 'ADA' (employee working with accommodation schedule according to physician)" and " 'DIS' (off work for non-occupational disability)." (Goeke Aff. ¶ 7–8). Stowers states that he was identified as "ADA," "special" and "DIS." (Stowers Depo. at 29). ESAB maintains that these terms were discontinued in the fall of 1998. (ESAB Ex. 10, Goeke Aff. ¶ 7).

---

3. Stowers admits that other workers with more seniority are required to work swing shifts. (Stowers Depo. at 55). He also admits that he bid on straight day shift jobs but these jobs were ultimately awarded to employees who had more seniority than he had. (Stowers Depo. at 61).

4. In late 1999, or early 2000, Stowers was primarily assigned to the mezzanine area of ESAB. (Houser Depo. at 15–16, 32–34). In April 2001, he was assigned to the Mig/Vaughn area of the plant to fill in for a worker receiving long term disability. (Houser Depo. at 32–34). He admitted that Mig/Vaughn assignment satisfies all of his "requisites for an accommodation." (Stowers Depo. at 75).

Following Stowers's assignment to the replacement worker position on the day shift, other workers indicated that they felt that Stowers was receiving preferential treatment. (Goeke Depo. at 64). Stowers claims that he was subjected to harassment by the workers who referred to his "ADA" designation as "American Dick head Association." (Stowers Depo. at 89–90). Another worker saw him checking his blood sugar level in the lunchroom and threatened to "kick his ass." (Stowers Depo. at 89). Goeke apologized for what had happened. (Stowers Depo. at 91). They briefly discussed whether the worker should be reprimanded for the remark but Goeke did not know the policy regarding harassment. (Stowers Depo. at 90–91). Disciplinary actions were not taken, however, because the production manager believed that this would exacerbate the situation. (Ruona Depo. at 17–18).[5] ESAB did not implement sensitivity training or other measures to remedy this problem. (Goeke Depo. at 65–66).

On September 24, 1997, Stowers filed a charge of discrimination against ESAB with the EEOC alleging that from January 1997 to August 1997 ESAB harassed him and denied him a reasonable accommodation because of his disability in violation of the ADA. (ESAB Ex. 2). In a related questionnaire, he asserted that he was not given a reasonable accommodation at ESAB since he was required to continually switch work activities and that the company terminated his short term disability payments because he did not report to physical therapy for an injury sustained in July 1997. In a second questionnaire, Stowers stated that the union did not support him in his endeavor to obtain a reasonable accommodation, failed to pursue two of his grievances and failed to inform him of a special contract vote. (EEOC Ex.

1, Fetzger Aff. and Ex.). Plaintiff never filed an EEOC charge against the union.

On September 28, 1998, the EEOC determined that Stowers "was not discriminated against as alleged with regards to his failure to accommodate allegation." The EEOC further determined, however, that "the Respondent [ESAB] has violated the Americans with Disabilities Act by publicly revealing disability related information on Charging party and fellow co-workers who have also been assigned 'special' disability related job assignments." (EEOC Ex. 1, Fetzger Aff. and Ex). The EEOC thereafter commenced this lawsuit.

### Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *LaPointe v. UAW, Local 600,* 8 F.3d 376, 378 (6th Cir.1993).

The moving party bears the initial burden of showing the absence of any such genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present evidence in support of the complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir.1990). As explained in Fed.R.Civ.P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest

---

**5.** Stowers also testified that he experienced other verbal attacks but he could not attribute

them to his accommodation. (Stowers Depo. at 93–100).

upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but the mere existence of a scintilla of evidence to support plaintiffs position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re Morris*, 260 F.3d 654 (6th Cir.2001).

### *Discussion*

### A. UAW's Motion for Summary Judgment (Re: Intervenor Plaintiff's Complaint)

### (1) Breach of Duty of Representation

The Intervening Complaint does not clearly allege a breach of duty of fair representation claim.[6] Assuming such was pled, the union argues that these claims were not filed within the applicable six-month statute of limitations. The union further argues that even if timely asserted,

there is no evidence of violation of duty. Finally, the union asserts that Stowers did not exhaust the administrative remedies provided in the UAW's Constitution before commencing this action against the union.

Section 9(a) of the National Labor Relations Act (hereafter "NLRA") grants unions exclusive representational status over employees that make up a bargaining unit and imposes a duty of fair representation upon the representative union. *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 367, 11 L.Ed.2d 370 (1964); 29 U.S.C. § 159(a); *accord Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 (1967). This duty requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.; see, also, Hoskins v. Local 1853 Intern. Union, United Auto, Aerospace and Agricultural Implement Workers of America*, 1999 WL 618074, 188 F.3d 507 (6th Cir.1999), *citing Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir.1994).

The union's duty does not depend on the existence of a collective bargaining agreement; rather, "it flows from the union's statutory position as the exclusive representative and exists both before and after the execution of an agreement." *Pratt v. United Automobile, Aerospace and Agricultural Implement Workers of America, Local 1435*, 939 F.2d 385, 388 (6th Cir. 1991), *citing Storey v. Local 327*, 759 F.2d 517, 523 (6th Cir.1985). Section 9(a) of the NLRA, in conjunction with 28 U.S.C. § 1337, creates a jurisdictional basis for actions for breach of the duty of fair representation independent of a cause of action against an employer or a union for claims

---

**6.** The Intervening Complaint clearly does not allege a "hybrid" action against ESAB and

the union.

resulting from breach of a collective bargaining agreement. *Id.*

In *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 163–164, 103 S.Ct. 2281, 2289–2290, 76 L.Ed.2d 476 (1983), the Court noted that breach of duty of fair representation claims are allegations of unfair, arbitrary or discriminatory treatment of workers by unions and borrowing from the most closely analogous statute of limitations period, the Court determined that such claims are subject to the six-month limitations period of § 10(b) of the NLRA, 29 U.S.C. § 160(b). *See, also, Adkins v. International Union of Elec., Radio & Mach. Workers,* 769 F.2d 330, 335 (6th Cir.1985) (stating that section 10(b) applies "to all unfair representation claims, regardless of the nature or presence of the section 301 claim" against the employer.). This limitations period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Robinson v. Central Brass Mfg. Co.,* 987 F.2d 1235, 1238 (6th Cir.1993), *citing Adkins v. International Union of Elec., Radio & Mach. Workers, supra.*

■ Stowers complains that Local union committee officials Tom Naykki and Harold Best harassed him and told other workers that Stowers's accommodation gave him "super seniority" to displace other workers from their jobs. Stowers also asserts that Naykki and Best failed to pursue a grievance that he filed in August 1997 and that they failed to inform him of a contract vote in 1996 or 1997. Finally, he asserts that from 1996 through 1998, union officials Bernardez and Best refused to pursue his complaint that he was not given overtime.

The undisputed facts demonstrate, however, that by June 1999, both Naykki and Best no longer worked at ESAB. (UAW Ex. I). Furthermore, Stowers fails to allege conduct beyond 1998. The Intervening Complaint was filed on January 29, 2001. Accordingly, none of the foregoing claims were filed within the six-month limitations period and all fail as a matter of law.

■ Stowers also claims that the union breached its duty of fair representation by failing to assist him in obtaining a reasonable accommodation for his condition, was overtly critical of his pursuit of ADA assistance at the plant and did not "stick up" for him in his pursuit of a reasonable accommodation. However, it is clear that, as early as June 1996, union officials opposed giving Stowers the accommodation he sought since they believed that it conflicted with the seniority provisions of the collective bargaining agreement. Thereafter, in July 1996, after meeting with union officials and Stowers, ESAB prepared a written agreement designating Stowers as "a permanent X-man" working 8:00 a.m. to 4:00 p.m. Although he did not sign the agreement, Stowers accepted the position. At this time he knew or should have discovered the acts constituting the alleged violation. Accordingly, Stowers's claim of breach of duty of fair representation is untimely.

■ Stowers contends that the union's failure to assist him in obtaining a reasonable accommodation constitutes a continuing violation. In *Noble v. Chrysler Motors Corp., Jeep Div.,* 32 F.3d 997, 1001 (6th Cir.1994) (citations omitted), the Court recognized two types of continuing violation situations:

> The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose

§ 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely "evidentiary," since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice.

Although Stowers complains that the union did not permit him to bid on other positions, he fails to describe any such situation occurring within the limitations period. To the contrary, ESAB's memorialization of the terms of the accommodation position specifically indicates that Stowers could in fact bid on other positions. Therefore, Stowers fails to demonstrate a continuing violation.

■ Finally, Stowers cannot prevail on his claims against the union due to his failure to exhaust the internal appeals procedures provided by the union. Before a union member may sue his union for breach of the duty of fair representation, he must exhaust the grievance procedure provided by the union constitution if the internal union appeals procedures can either grant the aggrieved employee full relief or reactivate his grievance. *Clayton v. International Union, UAW,* 451 U.S. 679, 692–96, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). Courts have discretion to decide whether to require exhaustion if any of three factors are present: (1) union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; (2) the internal union appeals procedure would be inadequate either to reactivate his grievance or to award him the full relief he seeks; or (3) exhaustion of internal procedures would unreasonably delay his opportunity to obtain a judicial hearing on the merits of his claim. *Id.,* 451 U.S. at 689, 101 S.Ct. 2088; *Monroe v. International Union, UAW,* 723 F.2d 22, 24–25 (6th Cir.1983).

Stowers did not file a complaint against the union with the Public Review Board of the UAW as required by the provisions of the UAW Constitution. (UAW Ex. R, Art. 32). Although Stowers asserts that it would have been futile to do so because of the hostility of his local officials, such contention is unpersuasive given that the review would actually have occurred before the Public Review Board which is independent of the UAW. (Klein Aff. ¶ 5–7). Accordingly, the failure to exhaust the administrative procedures has not been excused in this instance.

In accordance with all of the foregoing, there are no genuine issues of material fact and the union is entitled to judgment as a matter of law on Stowers's claim that the union breached its duty of representation in this matter.

## (2) ADA Claim

The Intervening Complaint does not allege that the union discriminated against Stowers on the basis of his disability in violation of the ADA. The UAW argues that, to the extent that Stowers's complaint can be construed to set forth a claim that the union discriminated against him because of his medical disability, such claim must fail as a matter of law since Stowers did not file a charge against the UAW with the EEOC prior to filing this lawsuit.

■ To properly commence a federal court action alleging a violation of the ADA, a plaintiff must file an EEOC charge in accordance with 42 U.S.C. § 2000e–

5(e)(1) within 300 days of the alleged discrimination. See 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e5(e)(1); *Brickers v. Cleveland Bd. of Education*, 145 F.3d 846, 848 (6th Cir.1998). "A charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9.

Stowers argues that a questionnaire he completed in connection with his EEOC charge against ESAB which relates to the union satisfies the jurisdictional prerequisite. However, it is undisputed that Stowers only filed an EEOC charge against ESAB and not the union.

In accordance with the foregoing, there are no genuine issues of material fact and the union is entitled to judgment as a matter of law on Stowers's ADA claim against it.

### B. ESAB'S Motion for Summary Judgment (Re: the EEOC Complaint and the Intervening Complaint)

#### (1) Reasonable Accommodation Claim under the ADA

The EEOC does not allege a failure to accommodate and, in fact, rejected Stowers's failure to accommodate allegation. Nor does Stowers allege that ESAB failed to reasonably accommodate him under the ADA but only, as discussed below, that its failure to allow him to work overtime violated the ADA.

#### (2) Denial of Overtime Claim under the ADA

■ Stowers alleges that ESAB violated the ADA by "failing to allow [him] the opportunity to work overtime based upon his disability...."

The Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq. ("the FLSA") defines overtime as all hours worked in excess of 40 in a work week. See 29 U.S.C. § 207. Similarly, ESAB's collective bargaining agreement with the UAW provides:

> Eight (8) hours of work shall constitute a normal or basic workday and forty (40) hours shall constitute a normal or basic work week. \*\*\*

ESAB argues that it specifically created Stowers's position in order to meet his day and hour requirements, *i.e.,* 8:00 a.m. to 4:00 p.m. Monday through Friday, and that this position was not eligible for overtime until it had been first offered to every other employee.

The undisputed facts of record demonstrate that in 1996, Stowers experienced difficulty managing his diabetes while working changing shifts. He then requested an accommodation from ESAB which would permit him to work an 8:00 a.m. to 4:00 p.m. shift from Monday through Friday. The record also demonstrates that Stowers supported this request with letters from his physician, Dr. Weiss. In that this requested work week, by definition, precludes Stowers from working more than forty hours per week, it is impossible for ESAB to assign him to work overtime without violating the medical restrictions dictated by Stowers and his physician. Accordingly, by failing to schedule Stowers to work overtime, ESAB did not discriminate against him, but rather complied with the restrictions imposed due to his disability. This claim is, therefore, without merit.

#### (3) Breach of Confidentiality Claim under the ADA

■ Stowers and the EEOC argue that at the time ESAB responded to Stowers's first request for an accommodation, ESAB disclosed the fact that he had a disability by informing the union officials and publishing and posting the "manning schedule" with notations after Stowers's name alerting employees that Stowers was re-

ceiving an ADA accommodation. Stowers also learned that the company nurse disclosed his condition to the one of his co-workers. EEOC and Stowers argue that the use of the notations constitutes an unauthorized disclosure of medical information in violation of § 12112(d)(4)(C).

ESAB argues that the confidentiality requirements of the ADA are limited to information obtained in three situations that are not applicable here: (1) medical information regarding a job applicant obtained through a permissibly required preemployment medical exam; (2) medical information obtained through a voluntary exam that is part of an employee health program, or; (3) information obtained through inquiries by the employer into an employee's ability to perform job-related functions. Therefore, ESAB maintains that the ADA reference in the posting of the "manning schedule" is not a statutory violation.

This Court agrees. 42 U.S.C. § 12112(d)(2) pertains to preemployment examinations and inquiries and 42 U.S.C. § 12112(d)(3) pertains to employment entrance examinations. In this matter, the information at issue was not gained in connection with a preemployment medical examination or inquiry or an employee entrance examination. As such, these provisions are clearly not applicable to this matter.

In accordance with the foregoing, the claims that ESAB disclosed confidential medical information in violation of the ADA are without merit. ESAB is entitled to summary judgment as to these claims as a matter of law.

### (4) Violations of O.R.C. 4112.02

Stowers alleges that ESAB violated the O.R.C. by discriminating against him based on his disability and by failing to provide him with the opportunity to work overtime. To the extent that this is con-sidered as a reasonable accommodation claim in addition to the overtime claim, this Court declines to exercise its jurisdiction. The Sixth Circuit has a general rule disfavoring a district court's exercise of pendent jurisdiction when the federal issues are dismissed before trial. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)., 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Gaff v. FDIC*, 814 F.2d 311 (6th Cir.1987).

In accordance with the foregoing, because Stowers cannot prevail on his federal claims for relief, his pendent state law claim under O.R.C. § 4112.02 is dismissed without prejudice.

### C. EEOC's Motion for Summary Judgment

As set forth previously, ESAB is entitled to judgment as a matter of law on the EEOC's claim for disclosure of information pertaining to Stowers's medical condition. Accordingly, the EEOC's Motion for Summary Judgment on that claim is not well-taken and is denied.

### D. Intervenor Plaintiff's Motion for Summary Judgment

As set forth previously, ESAB is entitled to judgment on Stowers's claim for denial of overtime and the claim for disclosure of confidential information. Accordingly, Stowers's Motion for Summary Judgement on these claims is not well-taken and is denied.

With regard to Stowers's claims against the union, as set forth previously, the union is entitled to judgment as a matter of law. That is, the union is entitled to judgment on Stowers's claim for breach of duty of fair representation and Stowers's ADA claim. Accordingly, Stowers's Motion for Summary Judgment on these claims is not well-taken and is denied.

*Conclusion*

For the foregoing reasons, Defendant UAW's Motion for Summary Judgment is GRANTED; Defendant ESAB's Motion for Summary Judgment is GRANTED; Plaintiff EEOC's Motion for Summary Judgment is DENIED; and Intervenor Plaintiff Ivan Stowers's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.